WARREN A. WELLS *vs.* CARLISLE TIRE CORPORATION.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

A building contract provided that the contractor should be paid the cost of the building to be erected by him, plus ten per cent thereof; that $180,000 should be an "outside guarantee price" to the owner, not to be exceeded unless it became necessary to pay to workmen wages in excess of those specified in a schedule made a part of the contract, in which case the guarantee price should be increased by the amount of such excess. It was also agreed that if the cost, as prescribed above, should prove to be "less than $180,000," the owner should pay to the builder twenty-five per cent of such saving; and that alterations in plans might be made, the cost thereof

to be added to the guarantee price. It was found necessary to pay wages in excess of the scheduled amount, and the owner ordered extras, the cost of the two items being slightly less than $50,000. There was admittedly a saving in cost over the estimate, but the parties were at issue as to the method of computing its amount: the owner (defendant) claiming it should be computed as the difference between the actual cost, including therein the excess cost of labor (but not the cost of extras), and $180,000; while the contractor (plaintiff) claimed it should be regarded as the difference between the cost of all items, including the excess labor costs and also extras, and said sum of $180,000. In the former case the saving would be $13,805, and in the latter $41,237. *Held*, upon a consideration of all the circumstances surrounding the making of the contract, including the fact that its interpretation as claimed by the plaintiff would be wholly advantageous to him and manifestly unfair to the defendant, that the method of computation as claimed by the defendant was the one required by the contract.

Argued January 25th—decided March 8th, 1923.

ACTION to foreclose a mechanic's lien, brought to and tried by the Superior Court in Fairfield County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff fixing the amount due at $11,688, and appeal by the defendant. *Error; judgment to be entered for plaintiff for $3,885.*

The plaintiff is a general contractor and builder, and defendant has its principal place of business in Stamford. On March 29th, 1920, they entered into a contract by which the plaintiff agreed to provide all the materials and perform all the work for the erection of certain factory buildings for defendant. The contract provided as follows: "Art. IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the Owner to the Contractor for said work and materials shall be the actual cost to this Contractor of the entire work, under this contract, plus ten (10%) per cent; by costs are meant subcontracts and all disbursements of every kind (including general expense at the building, superintendent, permits, licenses, equipment, scaffolding, travelling expenses,

acccident insurance, etc.) which the Contractor is called on to make in the execution of this contract, it being further mutually agreed, however, that the Contractor hereby names as a 'guarantee' price that thé said costs shall not exceed the sum of $180,000, which amount includes the builder's per cent; said guarantee price being based upon the conditions named in Exhibit 'A' hereto attached, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the Owner to the Contractor, in current funds, and only upon certificates of the Architect, as follows." Exhibit A, attached to the contract, provided: "It is understood and agreed that the 'outside guarantee' price mentioned in this contract, is based upon the following schedule of wages pertaining to the excavating, masonry and carpentry portions of the work, (Here follows schedule). In the event of higher prices being paid for the mechanics ànd laborers named in the above schedule and for the sub-branches of work enumerated, it is understood and agreed that the 'guarantee' price will be added to and increased by any excess that it shall be found necessary to pay in the execution of the work and letting of the subcontracts. . . . If the cost to the contractor as provided in this contract and upon the basis of the schedule above set forth, is less than $180,000, the owner hereby agrees to pay to the contractor 25% of such saving, at the same time as daté of final payment under this contract."

The contract also contained this provision: "Art. III. No alterations shall be made in the work except upon written order of the Architect; the amount to be paid by the Owner and added to the amount of the guarantee price."

During the performance of said contract, the wages which defendant was required to pay for mechanics and

laborers and the prices that it was required to pay for the doing of the sub-branches of the work enumerated, largely exceeded those referred to in the estimate.

While said contract was being performed, defendant from time to time ordered plaintiff to do extra work and to perform extra services in connection with the construction of said building and appurtenances. In each instance the extra work was done upon the written order of J. S. McClurg, the engineer of the defendant, who was its duly authorized agent and in charge of the work and who is designated as the architect in the contract, and all such extra work was approved by him in writing, as well as the prices which plaintiff charged therefor.

The extras cost $23,468.17, and the excess costs amounted to $24,938.51 plus the 10% commission to the contractor.

The cost of the work called for by the contract, based upon the schedules of wages and the cost of the sub-branches of the work set forth in schedule A therein, without reference to the extras and the excess costs, was $138,762.43. The total cost to defendant of all the work, including plaintiff's 10% commission, the extras and excess costs, was $191,867.86.

The trial court reached the following conclusions: (a) That the guarantee price of the contract was $233,105.43, being the original guarantee price of $180,000, plus the extras and excess costs, added thereto, in accordance with the express terms of the contract. (b) That plaintiff fully performed said contract at a cost to defendant of $41,257.57 less than the guaranteed price, and thereby made a saving of such sum to defendant. (c) That by the terms of said contract plaintiff became entitled to receive 25% of such saving, viz: $10,309.39. (d) That plaintiff is entitled to judgment for such sum and interest.

*Charles D. Lockwood* and *Raymond E. Hackett,* for the appellant (defendant).

*John H. Light,* for the appellee (plaintiff).

WHEELER, C. J.   The cost of the work called for by the contract at the prices named in Exhibit A, and without reference to the extras and excess costs, amounted to $138,762.43.   The excess costs, that is, the higher prices paid by the plaintiff for labor and for the subbranches of work enumerated, than was named in the contract, amounted to $24,938.51, and the amount paid for extras was $23,468.17 plus the 10% commission to the contractor, so that concededly the plaintiff was entitled to recover $191,867.86, which sum included the 10% commission on the entire work including excess costs and extras.

The single question involved in the appeal is as to whether the court erred in its construction of the last clause of Exhibit A, viz: "If the cost to the contractor as provided in this contract and upon the basis of the schedule above set forth is less than $180,000, the owner hereby agrees to pay to the contractor 25% of such saving, at the same time as date of final payment under this contract."   The court held that, under Article IX, the parties provided that the guarantee price should not exceed $180,000, plus the excess costs with the 10% commission added, viz: $27,432.36; and, under Article III, plus the cost of the extras with the 10% commission added, viz: $25,814.98; thus making the guarantee price $233,105.43; and that as the actual cost of the work plus the excess costs and extras, together with the 10% commission, was $191,867.86, the plaintiff was entitled to recover 25% of the saving between the guarantee price and the cost of the work, that is, 25% of $41,237.57, or $10,309.39.

The defendant claims that by the true construction of the contract the extras had nothing to do with the savings, and that the cost of the work called for by the contract was its cost under the schedule of Exhibit A, plus the excess cost due to increased wages, etc., in all $166,194.79, which sum represents the actual cost to the contractor of the work contemplated and required by the contract at the time of its execution, and the difference between this sum and the $180,000, viz: $13,805.21, represents the saving, 25% of which belonged to the contractor, or $3,451.05.

The difference between these respective claims is, that in one the extras are figured in as a part of the process of determining the saving, and in the other they are excluded. Since the intention of the parties is the test of interpretation of the contract (*Shaw* v. *Pope*, 80 Conn. 206, 67 Atl. 495), let us ascertain this purpose by examining the situation and circumstances which surrounded these parties when they entered into this contract. The plaintiff estimated the cost of this construction at $160,000. The defendant desired a guarantee price fixed, beyond which it should not be required to pay. The plaintiff feared that the cost of labor might rise. He was unwilling to fix a guaranteed price unless the increased labor costs should form a part of it. It was so agreed, and this was incorporated in schedule A.

The plaintiff was to receive 10% upon the cost of this work, including any excess costs which he had to pay for. A general provision for the payment by the owner for any extras by written order of the architect, was inserted. The parties agree that the contract contemplated the owner was to pay 10% commission to the contractor upon all extras supplied. What those might be neither party could foretell. The actual cost of the contract for the work then contem-

plated could be measurably anticipated. With an estimated cost of $160,000, the parties might reasonably have contemplated the saving of the difference between this amount and the $180,000, plus the excess costs from increased wages, etc. The defendant might be willing to pay a percentage upon savings which it could anticipate, but it would not be inclined to pay for a saving on extras whose amount it did not know or have basis for approximating. For an owner to enter into such a contract would be quite unreasonable. How could the savings be figured when it was impossible to tell what the cost of the extras might be, or to put against it a maximum guarantee price?

The owner desired to have a guarantee or maximum price. The contractor desired to protect himself by fixing the guarantee price high enough to avoid loss. So that by agreement this amount was raised above the contractor's estimate $20,000, making the maximum price $180,000, plus any excess costs covered by Exhibit A. In addition, the plaintiff required a provision inserted in the contract that if plaintiff completed the work for less than the $180,000, he should be entitled to receive, in addition to his 10% commission, 25% of such saving as was represented by the difference between the actual cost and the $180,000. The insistence upon a maximum price by the owner was to protect it against an excessive expenditure. It was the owner's advantage not to have this price too high; it was the contractor's advantage to have it high enough to protect him against loss. Undoubtedly each, weighing these divergent purposes, agreed upon the $180,000 plus the excess costs, if any, provided for as in Exhibit A. If the contractor kept the cost below this amount, both he and the owner would profit by the saving. The "savings clause" was inserted in order to furnish the contractor with a motive to keep the cost of the

work as near to his estimate as possible; if by his fidelity, competency, energy and diligence, he saved the owner from paying this maximum price, he would receive one fourth of the saving. The purpose of the savings clause was to effect a real saving to the defendant by giving the contractor a part of what he saved below a fixed amount. If the maximum price included the $180,000 plus the excess costs and plus the extras, and the contractor was to get 10% upon their total cost and upon the extras, and, in addition, 25% of the difference between this total cost and the maximum price plus the excess costs and extras, the contractor would have no incentive to keep the costs down, for the more they were the more he would get from his 10% commission, and the amount of his share of the savings would not be reduced, for the total excess costs would be added to the $180,000, and the 25% commission would depend upon the amount of the extras.

Such a contract would be an improvident one for the owner to make. He would be paying a profit to the contractor of one fourth the amount of the extras as savings, when these were not savings to the owner and the interest of the contractor would be to magnify the cost of the extras. Let us turn to the contract as made, to see if these parties have made a contract so wholly advantageous to the contractor and so manifestly unfair to the owner. The plaintiff's claim rests upon a construction of the savings clause of the contract which holds that the $180,000 therein named is the maximum price plus the excess costs plus the extras. In Article IX of the contract, relating to the compensation of the contractor, "guarantee price" is used as including the $180,000, plus the excess costs. In Exhibit A we find a similar use of the term "guarantee price" and provision for increasing the guarantee price. But in the savings clause of Exhibit A, "guarantee

price" is not used but the fixed amount of $180,000 is used. If the cost of the work is below this amount, both the owner and the contractor will profit by the saving. Unless a new savings provision is made for the parties, the $180,000 cannot be construed to be the equivalent of the "guarantee price" of the contract. Article IX provides that the contractor names as a guarantee price that the cost shall not exceed the sum of $180,000, which amount includes the builder's per cent together with the excess costs as specified in Exhibit A. Nowhere in this clause is provision made that the extras shall be a part of the cost. In Article III provision is made that the cost of the alterations shall be added to the amount of the "guarantee price." This provision was inserted so that the owner might pay the contractor for these and give to him the same commission as upon the work done. Article III does not refer to the savings clause. "Guarantee price" as used in Article IX cannot, as we interpret this contract, be construed to be the equivalent of the fixed sum of $180,000, as used in the savings clause of Exhibit A. The parties to this contract intended the savings clause to relate exclusively to the cost of the work at the time the contract was executed, and without reference to the amount to be expended for extras which was at that time contingent and unknown.

The actual cost of the work plus the excess costs and with the 10% commission added, was $166,194.79, which is the entire cost of the contract, as contemplated by the parties at the time of its execution. The difference between this sum and the $180,000 named in the savings clause, is the saving provided for in this clause and of this amount, $13,805.21, the defendant was entitled to one fourth, or $3,451.05.

There is error, the judgment is reversed and the Superior Court ordered to render judgment in favor of

the plaintiff that unless defendant on or before May 1st, 1923, pay the plaintiff $3,885.42 with interest from June 16th, 1922, then the defendant shall be foreclosed of all equity to redeem the premises subject to said mechanic's lien.

In this opinion the other judges concurred.